Filing # 138405726 E-Filed 11/12/2021 11:23:23 AM

**IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION**

Angela Carrington,

    *Plaintiff,*

    v.

Affiliate Asset Solutions, LLC,
Phoenix Financial Services, LLC,
and Pendrick Capital Partners, LLC,

    *Defendants.*

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Angela Carrington** ("**Ms. Carrington**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Affiliate Asset Solutions, LLC,** ("**Affiliate**"), **Phoenix Financial Services, LLC.** ("**Phoenix**") and **Pendrick Capital Partners, LLC** ("**Pendrick**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action for damages for not less than $8,000, but not more than $30,000 brought by Ms. Carrington against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et. seq.* ("**FCRA**") and the *Florida Consumer Collection Practices Act*, Section 559.55, *et seq.*, Florida Statutes ("**FCCPA**").

## JURISDICTION AND VENUE

2.    Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p the FCCPA, Section 559.77(1), Florida Statutes and Section 34.01, Florida Statutes.

3. Defendants are subject to the provisions of the FDCPA, FCRA and the FCCPA, and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Venue is proper in Pasco County, Florida, pursuant to Section 47.011 and Section 47.051, Florida Statutes, because the acts complained of were committed and / or caused by the Defendants therein.

## PARTIES

5. **Ms. Carrington** is a natural person residing in Wesley Chapel, Pasco County, Florida, and a *Consumer* as defined by the FDCPA, 15 U.S.C. §1692a(3), the FCRA, 15 U.S.C. § 1681a(c), and the FCCPA, Section 559.55(8), Florida Statutes.

6. **Affiliate** is a Delaware corporation with a primary business address of **145 Technology Parkway, Suite 100, Peachtree Corners, Georgia 30092**.

7. Affiliate's Florida Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

8. **Phoenix** is an Indiana limited liability company with a primary business address of 8902 Otis Avenue, Suite 103A, Indianapolis, Indiana 46216.

9. Phoenix is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.**

10. **Pendrick** is a Delaware corporation with a primary business address of **2331 Mill Road, Suite 510, Alexandria, Virginia 22314**.

11. Pendrick's Florida Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

12. The Defendants are *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that they use instrumentalities

of commerce, including postal mail, telephone, the internet, and/or e-mail, interstate and within the State of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

13.     Affiliate is licensed as a ***Consumer Collection Agency*** ("**CCA**") by the Florida Office of Financial Regulation, holding license number **CCA9903681.**

14.     Phoenix is licensed as a CCA, holding license number **CCA9903427.**

15.     Pendrick is also licensed as a CCA, holding license number **CCA9902797.**

16.     As licensed CCAs, the Defendants know or should know their obligations under the FDCPA, the FCRA, and the FCCPA.

### FACTUAL ALLEGATIONS

17.     On or about November 17, 2018, Ms. Carrington required emergency medical treatment.

18.     The medical service provider later claimed Ms. Carrington incurred a medical debt for charges not covered by insurance (the "**Debt**").

19.     Ms. Carrington adamantly disputes owing the debt, as she had sufficient medical insurance to cover the treatment and was not presented with any bill or invoice indicating any unpaid amount after treatment.

20.     Nonetheless, the Debt arose from expenses incurred for personal medical services and thus meets the definitions of "debt" found within the FDCPA and FCCPA.

21.     Sometime after this, the Debt was sold or otherwise assigned to Pendrick, or to some other unknown successor-in-interest who then re-sold the Debt to Pendrick.

### Pendrick's Assignment to Affiliate

22.     Sometime prior to November 2019, Pendrick placed or assigned the Debt for collection with Affiliate.

23.     When assigning the Debt to Affiliate for collection, Pendrick communicated information to Affiliate, including the amount of the Debt, the original creditor, the date of delinquency, the nature of the Debt, the fact that Ms. Carrington had been treated by a particular medical provider, the nature of services provided, the date of last payment, and Ms. Carrington's personal contact information.

24.     Ms. Carrington never consented to the disclosure of information about her or the Debt to Affiliate – an unrelated third party.

25.     Affiliate is not an attorney for Pendrick, nor has the Debt been reduced to judgment at any point, nor is Affiliate a consumer reporting agency.

26.     Pendrick's disclosure of information about Ms. Carrington and the Debt was therefore in violation of 15 U.S.C. § 1692c(b).  *See Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 8:19-cv-983 (11th Cir. April 21, 2021).

27.     On November 1, 2019, and January 11, 2021, Affiliate requested a consumer credit report concerning Ms. Carrington from Experian Information Solutions, Inc. ("**Experian**"), a nationwide ***Consumer Credit Reporting Agency*** ("**CRA**"), to facilitate its efforts in collecting the Debt from Ms. Carrington.

28.     These requests were recorded by Experian. **SEE PLAINTIFF'S EXHIBIT A.**

29.     To lawfully request a *Credit Bureau Report* ("**CBR**") from a CRA, a debt collector must be collecting a debt which arises from a *Credit Transaction* involving the consumer. *See* 15 U.S.C. §1681b(a)(3)(A); *Pigg v. Fair Collections & Outsourcing, Inc.*, No. 1:16-CV-01902-JMS-

DML, 2017 WL 3034266, at *4 (S.D. Ind. July 18, 2017) (holding that a debt collection agency did not have a permissible purpose because, even where a debt exists, a "credit transaction is a necessary prerequisite" for § 1681b(a)(3)(A)).

30. A *Credit Transaction* involving the consumer is one in which the consumer voluntarily participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. *See Pintos v. Pacific Creditors Association*, 504 F. 3d 792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc.*, Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

31. The alleged Debt was immediately due and owing – as is the case with almost all medical debts.

32. Indeed, neither the medical treatment, nor any other transaction between Ms. Carrington and the medical service provider constituted an extension of credit.

33. As such, the Debt did not arise from a credit transaction involving the consumer.

34. Affiliate thus lacked a permissible purpose for obtaining a credit report regarding Ms. Carrington.

35. Affiliate knew, or should have known, the nature of the underlying Debt, but it nonetheless requested a CBR regarding Ms. Carrington.

36. To obtain a CBR from a CRA, the requesting party must certify its permissible purpose to the CRA.

37. Affiliate thus falsely certified to Experian that it had a permissible purpose under the FCRA to obtain Ms. Carrington's report – *e.g.,* that the Debt involved a Credit Transaction.

38.    Affiliate's request for Ms. Carrington's credit report was in connection with its collection of the Debt.

39.    Indeed, the Experian report contained information which Affiliate used, or could have used, to collect the Debt from Ms. Carrington.

40.    Ms. Carrington has been damaged in that her personal and highly confidential information has been obtained by an entity with whom she did not consent and had no other permissible purpose to obtain such information.

41.    Affiliate furthered its collection efforts by sending a collection letter to Ms. Carrington, including one dated December 20, 2019. **SEE PLAINTIFF'S EXHIBIT B.**

42.    Rather than prepare and mail a collection letter on its own, Affiliate sent information to a commercial mail house in or around Ashland, VA ("**VA Mailhouse**").

43.    Affiliate disclosed highly personal information regarding Ms. Carrington and the Debt to the VA Mailhouse, including: Ms. Carrington's status as a debtor, the amount she supposedly owed and to whom it was owed, information regarding Ms. Carrington and her account, the fact the Debt concerned medical treatment and the nature of the treatment received.

44.    The VA Mailhouse then populated some, or all, of this information into a pre-written template, printed, and mailed the letter from Virginia to Ms. Carrington's residence in Florida. *Id.*

45.    The term *Communication* is defined in the FDCPA, 15 U.S.C. §1692a(3), as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

46.    Affiliate therefore "communicated" as per the FDCPA when it sent an electronic file containing information about Ms. Carrington and her purported debt to the VA Mailhouse.

47.     Affiliate's communication to the VA Mailhouse involved disclosure of the Debt to a third-party with instructions to produce a collection letter and mail it to Ms. Carrington, the consumer, with the objective that the correspondence would motivate the consumer to pay some or all the alleged Debt.

48.     Affiliate's communication to VA Mailhouse was therefore in connection with the collection of the Debt.

49.     15 U.S.C. § 1692c(b) states that:

> "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the <u>consumer</u>, his <u>attorney</u>, a <u>consumer reporting agency</u> if otherwise permitted by law, the <u>creditor</u>, the <u>attorney of the creditor</u>, or the <u>attorney of the debt collector</u>." (emphasis added).

50.     The VA Mailhouse is a distinct entity not owned by Affiliate.

51.     The VA Mailhouse is not a consumer reporting agency as referenced in 15 U.S.C. § 1692c(b).

52.     The VA Mailhouse is not an attorney as referenced in 15 U.S.C. § 1692c(b).

53.     The mail house used by Affiliate as part of its debt collection effort against Ms. Carrington therefore does not fall within any of the categories listed within 15 U.S.C. § 1692c(b).

54.     Due to Affiliate's communication to the VA Mailhouse, information about Ms. Carrington, including her name, medical issues, treatment dates, and the amount she supposedly owes as a result, are all within possession of a third party not expressly listed within 15 U.S.C. § 1692c(b).

55.     If a debt collector "conveys information regarding the debt to a third party – informs the third party that the debt exists or provides information about the details of the debt – then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

56.     Communications from debt collectors to mail houses are not exempt from the provisions of 1692c(b) and are "in connection with" the collection of a debt. *See generally, Hunstein*, No. 8:19-cv-983 (11th Cir. April 21, 2021).

57.     Affiliate devised this strategy of communicating to a third-party mail house so that it could churn out more collection letters than if it kept all of the work "in house."

58.     This mail house strategy allowed Affiliate to generate more profit and gain an advantage over competitors.

59.     In reckless pursuit of these business advantages, Affiliate disregarded the known, negative effects that disclosing sensitive medical information to an unauthorized third party would have on a consumer.

## Pendrick's Assignment to Phoenix

60.     Sometime prior to June 4, 2020, Pendrick recalled the debt from Affiliate and placed or assigned the Debt for collection with Phoenix.

61.     When assigning the Debt to Phoenix for collection, Pendrick communicated information to Affiliate, including the amount of the Debt, the original creditor, the date of delinquency, the nature of the Debt, the fact that Ms. Carrington had been treated by a particular medical provider, the nature of services provided, the date of last payment, and Ms. Carrington's personal contact information.

62.    Ms. Carrington never consented to the disclosure of information about her or the Debt to Phoenix – an unrelated third party.

63.    Phoenix is not an attorney for Pendrick, nor has the Debt been reduced to judgment at any point, nor is Phoenix a consumer reporting agency.

64.    Pendrick's disclosure of information about Ms. Carrington and the Debt was therefore in violation of 15 U.S.C. § 1692c(b).

65.    On June 4, 2020, and August 9, 2021, Phoenix requested a consumer credit report concerning Ms. Carrington from Experian. **SEE PLAINTIFF'S EXHIBIT A.**

66.    Phoenix also lacked a permissible purpose for obtaining a credit report regarding Ms. Carrington – for the same reasons as Affiliate.

67.    Phoenix likewise knew, or should have known, the nature of the underlying Debt, but it nonetheless requested a CBR regarding Ms. Carrington.

68.    Phoenix also falsely certified to Experian that it had a permissible purpose under the FCRA to obtain Ms. Carrington's report – *e.g.,* that the Debt involved a Credit Transaction.

69.    Phoenix's request for Ms. Carrington's credit report was in connection with its collection of the Debt.

70.    Indeed, the Experian report contained information which Phoenix used, or could have used, to collect the Debt from Ms. Carrington.

71.    Ms. Carrington has been damaged in that her personal and highly confidential information has been obtained by an entity with whom she did not consent and had no other permissible purpose to obtain such information.

72.     Phoenix furthered its collection efforts by sending a collection letter to Ms. Carrington, including letters dated June 5, 2020, and August 11, 2021. **SEE PLAINTIFF'S EXHIBITS C & D.**

73.     Rather than prepare and mail the collection letters on its own, Phoenix sent information to a commercial mail house, CompuMail, in or around Concord, CA ("**CompuMail**").

74.     Phoenix disclosed highly personal information regarding Ms. Carrington and the Debt to CompuMail, including: Ms. Carrington's status as a debtor, the amount she supposedly owed and to whom it was owed, information regarding Ms. Carrington's account, the fact the Debt concerned medical treatment and the nature of the treatment received.

75.     CompuMail then populated some, or all, of this information into a pre-written template, printed, and mailed the letter from Californina to Ms. Carrington's residence in Florida. *Id.*

76.     Phoenix therefore "communicated" as per the FDCPA when it sent an electronic file containing information about Ms. Carrington and her purported debt to CompuMail.

77.     Phoenix's communication to CompuMail involved disclosure of the Debt to a third-party with instructions to produce a collection letter and mail it to Ms. Carrington, the consumer, with the objective that the correspondence would motivate the consumer to pay some or all the alleged Debt.

78.     Phoenix's communication to CompuMail was therefore in connection with the collection of the Debt.

79.     CompuMail is a distinct entity not owned by Affiliate.

80.     CompuMail is not a consumer reporting agency as referenced in 15 U.S.C. § 1692c(b).

81.    CompuMail is not an attorney as referenced in 15 U.S.C. § 1692c(b).

82.    Ms. Carrington never consented to having her personal and confidential information, concerning the Debt or otherwise, shared with any mail house.

83.    The mail house used by Phoenix as part of its debt collection effort against Ms. Carrington does not fall within any of the categories listed within 15 U.S.C. § 1692c(b).

84.    Due to Phoenix's communication to CompuMail, information about Ms. Carrington, including her name, medical issues, treatment dates, and the amount she supposedly owes as a result, are all within possession of a third party not expressly listed within 15 U.S.C. § 1692c(b).

85.    Phoenix devised this strategy of communicating to a third-party mail house so that it could churn out more collection letters than if it kept all of the work "in house."

86.    This mail house strategy allowed Phoenix to generate more profit and gain an advantage over competitors.

87.    In reckless pursuit of these business advantages, Phoenix disregarded the known, negative effects that disclosing sensitive medical information to an unauthorized third party would have on a consumer.

88.    The Defendants' unauthorized and prohibited communications caused Ms. Carrington, a consumer who highly values her privacy, significant emotional distress since her confidential, legally protected medical and personal information had been unlawfully disseminated to third parties.

89.    Ms. Carrington has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## PENDRICK'S VIOLATIONS OF THE FDCPA

90.     Ms. Carrington adopts and incorporates paragraphs 1 – 89 as if fully stated herein.

91.     Pendrick violated **15 U.S.C. § 1692c(b)** in that it communicated information about the Debt to Affiliate and Phoenix, third parties, without Ms. Carrington's consent or other permissible purpose, and neither Affiliate or Phoenix were attorneys for the creditor, the creditor itself, attorneys for Pendrick, nor consumer reporting agencies.

92.     Pendrick's conduct renders it liable for the above-stated violations of the FDCPA, and Ms. Carrington is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

93.     Pendrick intentionally made these communications in order to gain an advantage over other debt collectors and generate additional profits.

**WHEREFORE,** Ms. Carrington respectfully requests this Honorable Court enter judgment against Pendrick, for:

a.      Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. §1692k(a)(2)(A);

b.      Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT II
## AFFILIATE'S VIOLATIONS OF THE FCRA

94.     Ms. Carrington adopts and incorporates paragraphs 1 – 89 as if fully stated herein.

95.     Affiliate violated **15 U.S.C. § 1681b(f),** either willfully and intentionally or recklessly and without regard for a consumer's rights, when it obtained two credit reports from

Experian regarding Ms. Carrington at a time when it did not have a permissible purpose for doing so, as the Debt did not arise from a credit transaction involving Ms. Carrington.

96.     Affiliate's conduct was willful, or alternatively, done with reckless disregard for Ms. Carrington's rights under the FCRA.

97.     Affiliate's conduct renders it liable under the FCRA to Ms. Carrington in a statutory amount up to $1,000 per incident.

**WHEREFORE,** Ms. Carrington respectfully requests that this Court enter judgment against Affiliate for:

a.      The greater of Ms. Carrington's actual damages or statutory damages of $1,000 per

        violation (**$2,000 total**) pursuant to 15 U.S.C. § 1681n(a)(1)(A), and / or 15 U.S.C.

        §1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3)

        and / or 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## COUNT III
## PENDRICK AND AFFILIATE'S VIOLATIONS OF THE FCCPA

98.     Ms. Pape adopts and incorporates paragraphs 1 – 89 as if fully stated herein.

99.     Affiliate, as agent for Pendrick, violated **Section 559.72(5), Florida Statutes,** when it disclosed to VA Mailhouse, a third party, information that would affect Ms. Carrington's reputation, specifically details about her medical issues and purported unpaid bills.  Affiliate was aware that there was no legitimate business *need* to convey this information, since Affiliate could easily have prepared and mailed the letter itself without any need to disclose the information to a third party.

100.    Instead, Affiliate *intentionally decided* to disclose this information to VA Mailhouse as part of its debt collection effort against Ms. Carrington because it allowed Affiliate to gain a competitive advantage over the competition through increased profit margins.

101.    At all times relevant Affiliate was acting as agent for Pendrick, and within the scope of its authority.

102.    Pendrick, as principal, is liable for the actions of its agent, Affiliate.

103.    The Defendants' conduct renders them liable for the above-stated violations of the FCCPA, and Ms. Carrington is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

**WHEREFORE,** Ms. Carrington respectfully requests this Honorable Court enter judgment against Affiliate and Pendrick, jointly and severally, for:

a.    Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.    Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

c.    Injunctive relief preventing the Defendants from making any further communications to the unauthorized third party when attempting to collect a consumer debt.

d.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e.    Such other relief that this Court deems just and proper.

### COUNT IV
### PHOENIX'S VIOLATIONS OF THE FCRA

104.    Ms. Carrington adopts and incorporates paragraphs 1 – 89 as if fully stated herein.

105.    Phoenix violated **15 U.S.C. § 1681b(f),** either willfully and intentionally or recklessly and without regard for a consumer's rights, when it obtained two credit reports from

Experian regarding Ms. Carrington at a time when it did not have a permissible purpose for doing so, as the Debt did not arise from a credit transaction involving Ms. Carrington.

106.    Phoenix's conduct was willful, or alternatively, done with reckless disregard for Ms. Carrington's rights under the FCRA.

107.    Phoenix's conduct renders it liable under the FCRA to Ms. Carrington in a statutory amount up to $1,000 per incident.

**WHEREFORE,** Ms. Carrington respectfully requests that this Court enter judgment against Phoenix for:

      a.   The greater of Ms. Carrington's actual damages or statutory damages of $1,000 per violation (**$2,000 total**) pursuant to 15 U.S.C. § 1681n(a)(1)(A), and / or 15 U.S.C. §1681o(a)(1);

      b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and / or 15 U.S.C. § 1681o(a)(2); and,

      c.   Such other relief that this Court deems just and proper.

## COUNT V
## AFFILIATE'S VIOLATIONS OF THE FDCPA

108.    Ms. Carrington adopts and incorporates paragraphs 1 – 89 as if fully stated herein.

109.    Phoenix violated **15 U.S.C. § 1692c(b)** when it disclosed information about the Debt to an unauthorized third-party mail house and the employees of that mail house in connection with the collection of the Debt, and the mail house was not an attorney for the creditor, the creditor, an attorney for Phoenix, or a consumer reporting agency.

110.    Phoenix's conduct renders it liable for the above-stated violations of the FDCPA, and Ms. Carrington is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

111.    Phoenix intentionally made these communications in order to gain an advantage over other debt collectors and generate additional profits.

**WHEREFORE,** Ms. Carrington respectfully requests this Honorable Court enter judgment against Phoenix for:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

b.    Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT VI**
**PENDRICK AND AFFILIATE'S VIOLATIONS OF THE FCCPA**

112.    Ms. Carrington adopts and incorporates paragraphs 1 – 89 as if fully stated herein.

113.    Phoenix, as agent for Pendrick, violated **Section 559.72(5), Florida Statutes,** when it disclosed to CompuMail, a third party, information that would affect Ms. Carrington's reputation, specifically details about her medical issues and purported unpaid bills. Phoenix was aware that there was no legitimate business *need* to convey this information, since Phoenix could easily have prepared and mailed the letter itself without any need to disclose the information to a third party.

114.    Instead, Phoenix *intentionally decided* to disclose this information to the CompuMail as part of its debt collection effort against Ms. Carrington because it allowed Phoenix to gain a competitive advantage over the competition through increased profit margins.

115.    At all times relevant Phoenix was acting as agent for Pendrick, and within the scope of its authority.

116.    Pendrick, as principal, is liable for the actions of its agent, Phoenix.

117.    The Defendants' conduct renders them liable for the above-stated violations of the FCCPA, and Ms. Carrington is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

**WHEREFORE,** Ms. Carrington respectfully requests this Honorable Court enter judgment against Phoenix and Pendrick, jointly and severally, for:

a.    Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.    Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

c.    Injunctive relief preventing the Defendants from making any further communications to the unauthorized third party when attempting to collect a consumer debt.

d.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Carrington hereby demands a jury trial on all issues so triable.

Respectfully submitted on November 12, 2021, by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
BDow@seraphlegal.com
/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**
A       Ms. Carrington's Experian Disclosure- July 15, 2021- Inquires
B       Affiliate's Collection Letter to Plaintiff, Dated December 20, 2019
C       Phoenix's Collection Letter to Plaintiff, Dated June 5, 2020
D       Phoenix's Collection Letter to Plaintiff, Dated August 11, 2021

# EXHIBIT A
## Ms. Carrington's Experian Disclosure- August 20, 2021 - Inquires

8/20/2021                                                Experian - Access your credit report

ANGELA CARRINGTON  |  Report number 3559-0090-89  |  August 20, 2021  |  Print  |  Close window

### Print your report

Below is all the information currently in your credit report. The payment history guide and common questions will help explain your credit information. Print this page or write down your report number for future access.

**Address**
Experian
P.O. Box 9701 Allen, TX 75013

Any pending disputes will be highlighted below.



| Personal Information | | | |
| --- | --- | --- | --- |
| Name(s) associated with your credit | | | |
| Name | Name identification number | | |
| ANGELA T CARRINGTON | 1 | | |
| ANGELA CARRINGTON | 10399 | | |
| ANGIE T CARRINGTON | 3 | | |
| ANGLEA T CARRINGTON | 24438 | | |
| ANGIE CARRINGTON | 5166 | | |
| ANGELA TIJUANA CARRINGTON | 2721 | | |
| ANGLEA CARRINGTON | 28986 | | |
| ANGELS T CARRINGTON | 5823 | | |
| Address(es) associated with your credit | | | |
| Address | Address identification number | Residence type | Geographical code |

Other personal information associated with your credit

Social Security number variation(s)

1/28

**EXHIBIT A**
**Ms. Carrington's Experian Disclosure- August 20, 2021 - Inquires**



# EXHIBIT A
## Ms. Carrington's Experian Disclosure- August 20, 2021 - Inquires



**EXHIBIT B**
## Affiliate's Collection Letter to Plaintiff, Dated December 20, 2019



For Return Mail Only
PO Box 1870
Oakland VA 23005-1870

Return Service Requested

12/20/19



ANGELA CARRINGTON

Affiliate Asset Solutions, LLC
Physical Address
145 Technology Parkway NW, Suite 100
Peachtree Corners, GA 30092-2913
Hours of Operation EST:
Monday–Thursday 8AM–10PM;
Friday 8AM–6PM
1-855-820-5237

Current Creditor: PENDRICK CAPITAL PARTNERS, LLC
Affiliate Account Number:
Original Creditor: SEE BELOW
Balance Due:

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



We can offer you the opportunity to resolve the account(s) for a one-time payment of $_____ To take advantage of opportunity, payment must be received no later than **1/04/2020**. You may pay this amount online at www.affiliateas.com are not obligated to renew this offer.

You may also call our office at 1-855-820-5237 between the hours of 8 AM and 10 PM Monday-Thursday or 8AM and Friday ET, or send your payment and all correspondence by mail to Affiliate, 145 Technology Parkway, Suite 100, Peac Corners, GA 30092. Please reference your Affiliate account number in all communications.

If you are not able to pay this amount by the due date, but wish to resolve this matter, please call us to speak directly representative. We will work with you to try and establish an alternative repayment program to resolve the account(s).

Please find the following details regarding the account(s):

## EXHIBIT C
## Phoenix's Collection Letter to Plaintiff, Dated June 5, 2020





**EXHIBIT D**
**Phoenix's Collection Letter to Plaintiff, Dated August 11, 2021**

